■ 757 3RD AVENUE ASSOCIATES, LLC, Appellant, v RAMESH M. PATEL, Respondent. [985 NYS2d 57]—

---

Order, Supreme Court, New York County (Joan A. Madden, J.), entered August 21, 2013, which denied the motion of plaintiff landlord for summary judgment on its first and second causes of action, granted the cross motion of defendant tenant for summary judgment dismissing the complaint, severed and continued tenant's counterclaim, and directed the parties to appear at a preliminary conference, unanimously affirmed, without costs.

Pursuant to a lease, tenant operates a newsstand on the premises owned by landlord. A "Sixth Amendment" to the lease, dated September 1, 2008, extended the lease to August 31, 2013. Paragraph 4 of the Sixth Amendment provides: "Landlord shall have the right, at any time, upon not less than thirty (30) days' prior written notice to Tenant, to terminate this Lease. In the event that Landlord shall exercise such termination right, this Lease shall come to an end and expire on the termination date set forth in such termination notice, with the same force and effect as though said date were the Expiration Date."

In or about the first half of 2011, landlord expressed to tenant its desire to perform extensive renovations to the building's lobby, where the newsstand was located. Because the renovations would require tenant to vacate the premises, he proposed, in a note to landlord, adding language to the lease which would provide that the "lease shall be extended beyond the expiration date of Aug. 31, 2013 [for the] number of months Tenant could not conduct the business due to substantial renovation and alteration to the lobby of the Building." Landlord's realtor then sent tenant an email stating, in pertinent part: "We would like to take this opportunity to thank you for your continued cooperation and we look forward to a long relationship together at 757 Third Avenue. We addressed your concerns in paragraphs 3 + 4."

The email attached a proposed "Seventh Amendment" to the lease, and requested that tenant execute it and return it, which he did. The Seventh Amendment granted landlord a license to access the leased premises for a period commencing on June 3, 2011, and ending on a date to be determined by landlord and communicated to tenant in a written notice to him at least five days prior. The Seventh Amendment further required tenant to remove all of his inventory and personal belongings from the premises during the license period. Consistent with tenant's proposal to landlord, paragraph 4 of the Seventh Amendment provided: "Landlord and Tenant acknowledge and agree that the term of this Lease shall be extended past the current Expiration Date of August 31, 2013 for a period of time equal to the License Period (the 'Extension Term'), unless this Lease is sooner terminated in accordance with the terms and conditions contained in the Lease or this Seventh Amendment."

Tenant vacated the premises as required under the Seventh Amendment, and landlord declared the license period over as of April 1, 2012, approximately 10 months later, at which time tenant resumed occupancy of his newsstand. Then, by letter dated October 5, 2012, landlord notified tenant that it was "exercising its option to terminate the Lease pursuant to the provision of Section 4 of the Sixth Amendment." The letter informed tenant that "[t]he Lease shall be deemed terminated as of November 8, 2012," adding that he "must vacate and surrender possession of the Premises on or before the Termination Date as if such date were the Expiration Date of the Lease."

Tenant refused to vacate the premises, and landlord commenced this action for ejectment, damages for use and occupancy and attorney's fees and costs. Tenant interposed an answer asserting several affirmative defenses, including that

the termination clause in the Sixth Amendment was not invoked in good faith, and that landlord was equitably estopped from terminating the tenancy. He also counterclaimed for damages based on landlord's allegedly wrongful early termination of the lease.

Landlord moved for summary judgment, and tenant cross-moved for the same relief. In support of his cross motion, tenant stated in an affidavit that he had been "induced to temporarily vacate the [p]remises in good faith for the ten (10) months, based on the representations contained in the lease that the term . . . was to be extended through June 30, 2014 and that the termination clause would not be enforced until said date."

The motion court denied landlord's motion for summary judgment and granted tenant's cross motion. The court construed the Seventh Amendment as reflecting the parties' understanding that tenant had agreed to vacate the premises during the license period in exchange for landlord's promise not to terminate the lease any sooner than the expiration of a period of time equal to the license period, measured from the previously agreed to expiration date of August 31, 2013. It stated that landlord was estopped from arguing otherwise, because "[a]ny other conclusion would render illusory [tenant]'s subsequently bargained for benefit of a lease extension, if after actually giving up his right to occupy the premises and operate his business for ten months, plaintiff retained an unconditional and unfettered right to terminate his lease at any time on 30 days' notice."

The party invoking a defense of equitable estoppel must establish: "(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts" (*BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 853 [1st Dept 1985] [internal quotation marks omitted]). The Court of Appeals has explained that: "The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. . . . Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying

on the opposing party's actions, has been misled into a detrimental change of position" (*Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326 [2006]).

Tenant argues that equitable estoppel applies because, when landlord agreed to extend the lease term for a period of time equivalent to the license period, it led tenant to reasonably believe that it would not invoke the early termination provision in the Sixth Amendment, and that it otherwise would not have gratuitously given up 10 months of revenue. Landlord counters that the Seventh Amendment confirmed its right to terminate the lease before the expiration date, by including in paragraph 4 the phrase "unless this Lease is sooner terminated in accordance with the terms and conditions contained in the Lease or this Seventh Amendment." It claims that tenant cannot object to its exercise of a right that is explicitly permitted by the lease.

We reject landlord's interpretation of the lease, because it renders the benefit to tenant illusory (*see Zurakov v Register.Com, Inc.*, 304 AD2d 176, 179 [1st Dept 2003]). It simply makes no sense that tenant would have agreed to vacate the premises for an indeterminate period of time, only to be subjected to permanent eviction upon its return. To the extent that paragraph 4 of the Seventh Amendment still permits early termination by landlord, we note that the lease provides several avenues for early termination based on, for example, tenant's bankruptcy or other default. Thus, contrary to its position, it is not necessary to read any material out of the lease to arrive at our result. Because landlord induced tenant to vacate the premises by offering an extended term, and then deprived tenant of that benefit, it is equitably estopped from terminating the lease.

*Eujoy Realty Corp. v Van Wagner Communications, LLC* (22 NY3d 413 [2013]), relied on by landlord, does not dictate a different result. In that case, the lease required the tenant, which rented space on an outdoor billboard, to pay the annual rent in a lump sum on January 1. On January 8, after paying the entire annual rent, the tenant exercised its right, pursuant to the lease, to terminate based on the fact that the public's view of the billboard had become obstructed. It stopped payment on the rent check and substituted a check representing the much smaller, prorated amount for the year. The Court of Appeals held that the tenant was liable for the entire annual rent. In doing so, it rejected the tenant's assertion, disputed by the landlord, that the parties orally modified the payment terms of the lease, stating that " 'no sensible businessperson' would neglect to reduce a lease modification to writing" (22 NY3d at 427).

Here, tenant is not relying on an oral modification of the lease. Rather, it is relying on an arrangement to which there is no dispute the parties agreed. More importantly, unlike in *Eujoy*, the arrangement was reduced to writing in paragraph 4 of the Seventh Amendment. Accordingly, tenant is entitled to enforce the express language of the Seventh Amendment. Concur— Mazzarelli, J.P., Andrias, DeGrasse and Clark, JJ.